IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SEAN CROSTON | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 11-1898** |
| | * | |
| OFFICE OF PERSONNEL MANAGEMENT | * | |
| | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Sean Croston has sued the Office of Personnel Management ("OPM"), alleging that it erroneously denied insurance coverage for hypoallergenic infant formula under the Federal Employees Health Benefits Act, 5 U.S.C. § 8901 *et seq*. Both Croston and OPM have filed Motions for Summary Judgment [Paper Nos. 11, 12]. For the following reasons, OPM's Motion is **GRANTED** and Croston's Motion is **DENIED**.

**I.**

The facts in this case are straightforward. Croston is enrolled in the Federal Employees Health Benefits Program through his health insurance carrier, the National Association of Letter Carriers ("NALC"). His NALC Health Benefit Plan ("the Plan") lists "medications and supplies" that are covered as well as specific items that are "[n]ot covered," including "[n]utrients and food supplements, even when a physician prescribes or administers them." Under the Plan, coverage extends to "durable medical equipment," defined as "equipment and supplies" that:

> 1. Are prescribed by your attending physician (i.e., the physician who is treating your illness or injury);
> 2. Are medically necessary;
> 3. Are primarily and customarily used only for a medical purpose;

      4. Are generally useful to a person with an illness or injury;
      5. Are designed for prolonged use; and
      6. Serve a specific therapeutic purpose in the treatment of an illness or injury.

The Plan provides examples of "equipment" that satisfies the six criteria: oxygen and oxygen apparatus, dialysis equipment, hospital beds, wheelchairs, and crutches. The Plan also provides examples of covered "supplies": insulin and diabetic supplies; needles and syringes for covered injectables; and ostomy and catheter supplies.

      Croston's son, born in August 2010, suffered from severe acid reflux and allergies and had difficulty consuming milk or formula. Croston brought his son to a pediatric gastroenterologist, who prescribed Nutramigen AA. The manufacturer of Nutramigen AA states that the product is "an amino acid-based nutritionally complete formula for infants and toddlers with severe cow's milk protein allergy and/or multiple food protein allergies" that is "iron fortified" and which provides "nutrients also found in breast milk." On its website, the manufacturer advises customers that insurance companies are "not required to cover medical foods, but some do." To help customers obtain reimbursement for Nutramigen AA, the website provides a form letter for doctors to complete that sets forth "a medical need" for the product.

      Croston purchased several 14-ounce cans of Nutramigen AA and, as to them, submitted reimbursement claims to the Plan. In support, he attached a form letter, completed by the pediatric gastroenterologist, stating that Nutramigen AA was "medically necessary" for Croston's son and could be used as the "sole source of nutrition" for an infant. On February 28, 2011, the Plan denied Croston's request for coverage on the ground that "[t]he Plan does not cover Nutramigen AA as a food supplement" even if a physician prescribes it. On March 4, 2011, Croston sent a letter to the Plan requesting reconsideration of the decision to deny coverage. On April 1, the Plan reaffirmed its decision and informed Croston of his right to seek

further review by OPM. Six days later, Croston wrote to OPM and requested review of the Plan's decision denying benefits for Nutramigen AA. On June 24, OPM issued its determination upholding the denial of coverage. "The Plan does not have a benefit for medical foods," OPM explained, "and it specifically excludes coverage for *Nutrients and food supplements, even when a physician prescribes or administers them*." OPM made clear that it could not direct the Plan "to provide benefits for services/supplies that are specifically listed as excluded." In addition, OPM stated that

> [t]he billing code listed in [Croston's] request was B4161-Enteral formula, for pediatrics, hydrolyzed/amino acids and peptide chains proteins, incudes fats, carbohydrates, vitamins and minerals, may include fiber, **administered through an enteral feeding tube**. (A **feeding tube** is a medical device, usually inserted into a patient's stomach, used to provide nutrition to patients who cannot obtain nutrition by swallowing.)

On July 11, 2011, Croston filed suit the present against OPM. He argues that Nutramigen AA is neither a "nutrient" nor a "food supplement" and therefore has been wrongly excluded from coverage. Nutramigen AA, he contends, is a medical food covered under the Plan's provision for durable medical supply products. Croston asks the Court to order OPM to direct the Plan to provide coverage for his claims. Both parties have filed motions for summary judgment.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R.

CIV. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  There must be sufficient evidence for a reasonable jury to find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986), and a "mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Although *pro se* pleadings are "'held to less stringent standards than formal pleadings drafted by lawyers,'" *Haines v. Kerner*, 404 U.S. 519, 520 (1972), they "must still set forth facts sufficient to withstand summary judgment."  *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002) (citations omitted).

**III.**

**A.**

The parties disagree as to what standard of review the Court should apply in evaluating OPM's decision.  Croston argues that de novo review applies because the Court is deciding questions of law, and a policy exclusion is an issue of contract interpretation within the competence of courts.  OPM counters that the Court should accord some deference to the agency

and uphold its decision unless it is arbitrary and capricious. The Court concludes that arbitrary and capricious review applies.

OPM oversees the Federal Employees Health Benefits Program and established an administrative procedure for resolving benefit disputes between Program carriers and plan enrollees. *See* 5 U.S.C. §§ 8902, 8913; 5 C.F.R. § 890.105. "Only after both the carrier's claims process and the OPM's review process are completed may the e[nrollee] seek judicial review of the denied claim." *Malek v. Leavitt*, 437 F. Supp. 2d 517, 526 (D. Md. 2006) (citing 5 C.F.R. § 890.107(c)). A court reviews OPM's decisions on benefits claims pursuant to the Administrative Procedures Act, 5 U.S.C. § 706. *Id.* Section 706 of the Act states in pertinent part that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determined the meaning or applicability of the terms of agency action. The reviewing court shall . . .

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

In *Caudill v. Blue Cross & Blue Shield of N.C.*, the Fourth Circuit held that "[b]enefit provisions are rules under the Administrative Procedures Act, . . . [and] [t]he standard of review by a court on an administrative agency's interpretation of a rule is whether the decision was arbitrary and capricious." 999 F.2d 74, 80 (4th Cir. 1993) (citing 5 U.S.C. § 706(2)(A)). "A district court defers to OPM's interpretation of health benefit contracts," the panel concluded, "unless 'plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Myers v. United States*, 767 F.2d 1072 (4th Cir. 1985)). Applying this standard, the panel went on to affirm OPM's decision to deny benefits because the insurance plan at issue specifically excluded the medical procedure and related treatment for which the plaintiff sought coverage. *Id.* Nothing in

the Fourth Circuit's view suggested that OPM's interpretation of the contract was "irrational." *Id.*

Croston contends that the Fourth Circuit has since abandoned the standard articulated in *Caudill*. In *Burgin v. Office of Pers. Mgmt.*, 120 F.3d 494 (4th Cir. 1997), he maintains, the Fourth Circuit explicitly held that OPM's interpretations of benefit exclusions are not entitled to deference. Another Judge in this judicial district has noted the apparent tension between *Burgin* and previous cases.[1] *See Malek v. Leavitt*, 437 F. Supp. 2d 517, 527 (D. Md. 2006). But to the extent *Burgin*, a panel opinion, conflicts with the Fourth Circuit's prior precedent, the "earliest opinion controls." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc). One panel "cannot overrule, explicitly or implicitly, the precedent set by a prior panel . . . ." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 n.2 (4th Cir. 2002) (internal quotation marks and citation omitted).

Applying deferential review also accords with more recent cases. In *Gates v. King*, for example, the Fourth Circuit made clear that it examined "the decision of OPM under the arbitrary and capricious standard of review." No. 96-2710, 1997 WL 716426, at *1 (4th Cir. Nov. 18, 1997) (citing 5 U.S.C. § 706(2)(a) and *Caudill*, 999 F.2d at 80). Another Judge in this district similarly held that it was obliged to "defer to OPM's findings if the agency's action has a rational basis in the administrative record." *Klejnot v. Cohen*, No. MJG003732, 2001 WL 34379466, at *2 (D. Md. Dec. 17, 2001) (citing *Myers*, 767 F.2d at 1074), *aff'd*, 37 F. App'x 644 (4th Cir. 2002). Indeed, the majority of courts that have addressed this issue apply the arbitrary and capricious standard. *See, e.g.*, *Weight Loss Healthcare Ctrs. of America, Inc. v. Office of*

---

[1] As the court went on to note, however, "[d]espite its assertion that a *de novo* standard of review was proper, in *Burgin* the Fourth Circuit concluded that the OPM's interpretation of the contract 'was not a reasonable one' and that the OPM decision denying coverage was 'arbitrary' and 'constitute[d] an abuse of discretion.'" *Malek*, 437 F. Supp. 2d at 527 n.17 (D. Md. 2006) (quoting *Burgin*, 120 F.3d at 499).

*Pers. Mgmt.*, 655 F.3d 1202, 1205-07 (10th Cir. 2011); *Muratore v. Office of Pers. Mgmt.*, 222 F.3d 918, 922-23 (11th Cir. 2000); *Nesseim v. Mail Handlers Benefit Plan*, 995 F.2d 804, 806-08 (8th Cir. 1993); *Harris v. Mutual of Omaha Cos.*, 992 F.2d 706, 712 (7th Cir. 1993). As the Eleventh Circuit notes, deference is justified because OPM has "relevant expertise" in the area—"it negotiates the contracts at issue and, pursuant to the FEHBA [Federal Employees Health Benefits Act], routinely interprets plans to determine an insurance carrier's liability." *Muratore*, 222 F.3d at 923 (citing 5 U.S.C. § 8902(j)).

Accordingly, the Court will adhere to *Caudill* and review OPM's decision under the arbitrary and capricious standard.

**B.**

In reviewing OPM's decision to deny coverage for Nutramigen AA, the Court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "Agency action may not be set aside as arbitrary and capricious if the action has a rational basis in the administrative record." *Gates v. King*, No. 96-2710, 1997 WL 716426 at *2 (4th Cir. Nov. 18, 1997) (citing *American Meat Inst. v. United States Dep't of Agric.*, 646 F.2d 125, 127 (4th Cir. 1981)). Put another way, "OPM's determination must be affirmed unless it was not based on consideration of the relevant factors and there is no rational connection between the facts found and the choice made." *Klejnot v. Cohen*, No. MJG003732, 2001 WL 34379466, at *3 (D. Md. Dec. 17, 2001) (citations omitted).

Even if the Court would, looking at the record, "have come to a different conclusion, it must not substitute its judgment for that the of the administrative agency . . . ." *Caudill v. Blue Cross & Blue Shield of N.C.*, 999 F.2d 74, 80 (4th Cir. 1993).

The Court finds that OPM's determination that Nutramigen AA was specifically excluded from coverage under the Plan was not arbitrary and capricious. First, there is no evidence that OPM based its decision on any information other than the Plan language and documents submitted by Croston and NALC. Second, OPM's interpretation was rational. OPM upheld the denial of coverage because the Plan explicitly "excludes coverage for *Nutrients and food supplements, even when a physician prescribes or administers them*." While the Plan does not expressly define the terms "nutrient" or "food supplement," looking to the description of the product given by the manufacturer of Nutramigen AA, it is a "nutritionally complete formula for infants and toddlers with severe cow's milk protein allergy and/or multiple food protein allergies" that is "iron fortified" and includes "nutrients also found in breast milk." Croston purchased Nutramigen AA to provide his son with nutrients. It was not irrational, therefore, for OPM to conclude that Nutramigen AA, prescribed by a pediatric gastroenterologist, fell under the "nutrients" exclusion.

Croston argues that Nutramigen AA is nutritionally complete and is not itself a nutrient or food supplement, in the manner of calcium chews or folic acid pills. In Croston's view, the latter are excluded under the Plan whereas products that contain many nutrients are not. Whether logic may inhere in this argument—and the Court will assume for the moment that some may—the Court cannot simply substitute its judgment for OPM's. The agency's "interpretation is controlling unless plainly erroneous." *Klejnot*, 2001 WL 34379466, at *3 (citation omitted).

The Court cannot conclude that OPM plainly erred in applying the Plan's specific exclusion for "nutrients" to Nutramigen AA.

### C.

There is another reason to affirm OPM's decision to deny coverage: Nutramigen AA is not otherwise covered under the Plan. As Croston concedes, all claims must fall within the scope of the Plan's defined benefits to be covered, even if not explicitly excluded. He points to only one provision as grounds for coverage, arguing that Nutramigen AA is "durable medical equipment." The Court finds this argument wholly unconvincing and agrees with OPM that Nutramigen AA does not satisfy the six-part test to qualify as durable medical equipment.

But Croston maintains that OPM cannot dispute whether Nutramigen AA falls under the durable medical equipment category because it never relied on this factor in reaching its decision. In its decision, however, OPM did raise the issue of lack of affirmative coverage, stating that the "Plan does not have a benefit for medical foods." Moreover, OPM laid stress on the fact that Croston used the billing code for formula "**administered through an enteral feeding tube**," seeking only reimbursement for Nutramigen AA, not for any a feeding tube or other equipment.

In any event, remand to OPM to consider whether Nutramigen AA is durable medical equipment would be futile.[2] The fact remains that Croston cannot demonstrate that Nutramigen AA satisfies the six-part test. All the examples of durable medical equipment cited in the Plan are tangible items of a permanent nature, or are tied to some tangible permanent item. Thus, the list includes not only wheelchairs and hospital beds, but also "oxygen *and* oxygen apparatus" as well as "insulin *and* diabetic supplies." None of the examples are analogous to 14-ounce

---

[2] In determining whether agency action is arbitrary and capricious, the Court must take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706; *see also All Indian Pueblo Council v. United States*, 975 F.2d 1437, 1443 (10th Cir. 1992) ("If the outcome of a remand is foreordained, we need not order one.").

-9-

containers of formula with a finite number of servings. The fact that Croston may have purchased several large boxes of Nutramigen AA does not change the character of the product. Nutramigen AA was not and is not "designed for prolonged use." Infant formula is consumed, and once consumed, is no longer of any use.

## IV.

For the foregoing reasons the Court **GRANTS** OPM's Motion for Summary Judgment [Paper No. 11] and **DENIES** Croston's Cross-Motion for Summary Judgment [Paper No. 12].

A separate Order will **ISSUE**.

                                             /s/
                                **PETER J. MESSITTE**
                         **UNITED STATES DISTRICT JUDGE**

**June 1, 2012**